NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

NISHAN SINGH,

Petitioner,

v.

JEFFERSON B. SESSIONS III, Attorney General,

Respondent.

No.   11-72259

Agency No. A097-125-775

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 17, 2017
San Francisco, California

Before:  KLEINFELD and WARDLAW, Circuit Judges, and PETERSON,**
District Judge.

Nishan Singh petitions for review of the determination of the Board of

Immigration Appeals ("BIA") that adopted the agency's denial of his application

for asylum, withholding of removal, and protection under the Convention Against

---

*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

**      The Honorable Rosanna Malouf Peterson, United States District
Judge for the Eastern District of Washington, sitting by designation.

Torture ("CAT"). The BIA adopted the adverse credibility finding of the Immigration Judge ("IJ") that served as a basis for the denial of the relief Singh requested.

1. "We review the findings of fact, including adverse credibility determinations and the findings underlying the denial of relief, for substantial evidence." *Singh v. Holder*, 638 F.3d 1264, 1268–69 (9th Cir. 2011). Because we review this case under the standards that were applicable prior to the enactment of the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, inconsistencies in a petitioner's testimony must go to the heart of the petitioner's claim to support an adverse credibility finding. *Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 660 (9th Cir. 2003). The IJ relied on a number of alleged inconsistencies, mostly relating to what the IJ found to be differences between Singh's testimony in 2009 and an asylum officer's notes from an asylum interview conducted in 2003. We previously have expressed concerns regarding an IJ's over-reliance on an asylum officer's notes where, as here, there is no transcript of the interview. *See, e.g.*, *Joseph v. Holder*, 600 F.3d 1235, 1243 (9th Cir. 2010); *Singh v. Gonzales*, 403 F.3d 1081, 1089–90 (9th Cir. 2005). We find that the IJ's reliance on perceived inconsistencies between the asylum officer's notes from 2003 and Singh's testimony in 2009 was not supported by substantial evidence. Though the asylum officer testified before the IJ about his general practice in conducting asylum

interviews, this testimony occurred six years after the original asylum interview, and the officer had no specific recollection of his interview of Singh and was unable to corroborate the accuracy of his notes. The asylum interview was not transcribed, and the record does not reflect that Singh had any contemporaneous opportunity to review the notes and confirm that they were consistent with his testimony. When Singh was asked about discrepancies between the asylum officer's notes and Singh's subsequent testimony, he consistently averred that his later testimony was accurate and he did not know why the asylum officer notes did not reflect that account. There was thus no basis in the record for the IJ to rely on the asylum officer's unverified notes instead of Singh's testimony before the IJ. The remaining inconsistencies relied upon by the IJ did not go to the heart of Singh's claim. Accordingly, we find that the IJ erred in making her adverse credibility finding.

The IJ's adverse credibility finding was not based on her doubt as to Singh's identity, so we need not address that concern here. Nonetheless, to the extent that the IJ's suspicions about the validity of Singh's identification card informed the adverse credibility finding, those suspicions were not supported by substantial evidence. "[A]n adverse credibility finding cannot rest on mere speculation or conjecture, such as the IJ's bare subjective opinion about the authenticity or probity of documents." *Lin v. Gonzales*, 434 F.3d 1158, 1162 (9th Cir. 2006).

11-72259

Here, the IJ offered only "speculation as to what an official document should look like, conjecture about the significance of the missing details in the document, and musings as to format of the document," *id.* at 1160, to reject Singh's identity card, without any basis in the record for believing that Singh had falsified his documentation. Moreover, the IJ failed to acknowledge the numerous other documents Singh offered to prove his identity. As such, any doubts as to Singh's identity and the validity of his identification documentation were based only on speculation and were thus not supported by substantial evidence.

We remand on an open record for the agency to determine Singh's eligibility for relief.

2. We review factual findings underlying a denial of relief under the Convention Against Torture for substantial evidence. *See Zheng v. Ashcroft*, 332 F.3d 1186, 1193 (9th Cir. 2003); *Cole v. Holder*, 659 F.3d 762, 770 (9th Cir. 2011). The IJ's adverse credibility finding influenced the denial of CAT relief. Therefore, we remand for the agency to determine whether Petitioner has proven eligibility for relief.

**PETITION FOR REVIEW GRANTED; REMANDED.**

**Nishan Singh v. Sessions.** No. 11-72259

KLEINFELD, Senior Circuit Judge, dissenting

I respectfully dissent.  I would deny the petition for review.  The record supported the BIA's determination that there was no clear error in the immigration judge's conclusion that Singh lacked credibility.

The majority evidently would extend Singh v. Gonzales to the dissimilar circumstances in this case.[1]  There, the asylum officer did not testify to confirm his notes.[2]  Here, he did.  There, his notes were only a "short, conclusory summary,"[3] here, his notes were extensive and detailed.  Indeed, the testimony of the asylum officer is very comparable to situations where doctors testify and when policemen testify.  They handle a great volume of people, they often have no recollection of them, and they rely on their past recollection recorded.  The utility of past recollections recorded and relative reliability is why there is an exception to the hearsay rule for past recollection recorded.[4]  Furthermore, in Singh, the applicant

---

[1]  Singh v. Gonzales, 403 F.3d 1081 (9th Cir. 2005).

[2]  Id. at 1088.

[3]  Id. at 1089.

[4]  See FED.R.EVID. 803(5).

was given no chance to explain the discrepancies between his asylum application, the asylum officer's notes, and his testimony before the immigration judge.[5] Here, he was advised of the apparent discrepancies and given a full opportunity to explain them. There, the notes were not contemporaneous, here, they were.[6]

We are obligated in this case to follow Li v. Ashcroft, where we held that statements given at an airport interview were properly used as a basis for impeachment because there were sufficient indicia of reliability.[7] The same is true here. And, as we noted in Li, "Our inquiry ends if the IJ could reasonably conclude that the sworn interview statement was a reliable impeachment source."[8]

In Singh v. Gonzales, the issue was discrepancies in the precise dates of four arrests.[9] A normal person might easily make mistakes on dates, as anyone who has erred on an anniversary or birthday date knows. Here, by contrast, Singh told the asylum officer that he was arrested past midnight, but testified before the

---

[5] Id. at 1090.

[6] Id. at 1089.

[7] Li v. Ashcroft, 378 F.3d 959, 963 (9th Cir. 2004).

[8] Id.

[9] Singh, 403 F.3d at 1085.

immigration judge that the police arrived at 9:00 in the morning. That is a much more striking discrepancy, and it is much less plausible that one would forget whether he had been rousted out of bed in the middle of the night or arrested at breakfast time. There were other discrepancies as well that were much less plausible than the discrepancies in Singh v. Gonzales.

The immigration judge in this case also was justifiably inclined to doubt Singh's credibility, as the BIA found, because of the identification card he offered as evidence. As the immigration judge explained in her decision, "the photograph has been washed, and there is no way of knowing whether it actually pertains to the respondent or not . . . it is highly suspect . . . that this ink would be so clear on the signature part and the date if this is [has] been washed in the manner in which respondent has indicated. To this date, I do not know who respondent is." Singh testified that the card had been washed, and that was why it was largely illegible and did not show his picture. Yet the signature and date were clear, the ink purposefully unaffected by the washing. If the pants were washed as Singh had claimed, the entire card wold have been washed, not just parts of it.

The matters on which Singh was found not to be credible, whether he was really Nishan Singh and whether he had been arrested at all, went to the heart of

his claim.  There is substantial evidence on the record as a whole that supports the

BIA's conclusion that the immigration judge's adverse credibility determination

was not clearly erroneous.  Accordingly, we should deny the petition.